(14 Misc. Rep. 430.)

## PEOPLE v. WATSON.

(Court of General Sessions, New York County. November 12, 1895.)

BAIL—FELONY CASE—PRESENT INSANITY.

Admission to bail in a felony case, being in the discretion of the court, will be refused until determination of that issue, where defendant, in addition to not guilty, pleads present insanity.

William Watson, alias Bill Vosburgh, was indicted for aiding, assisting, and abetting in the promotion of and carrying on of a scheme or device of offering and purporting to offer for sale and distribution counterfeit paper money of the United States (otherwise "green goods"), the indictment being as for a second offense. Defendant pleaded not guilty, with a special plea of present insanity, and he now moves to be admitted to bail. Denied.

Bartow S. Weeks, Asst. Dist. Atty., for the People.
Wauhope Lynn and Maurice Meyer, for defendant.

GOFF, R. (orally). Owing to the limited time at my disposal since yesterday, I have not had time to reduce to writing my views upon the question submitted in this proceeding. Therefore I will have to express myself orally from the bench.

The right to bail in criminal cases, as in the one presented here, was never recognized in common law. The right to bail in civil cases was always recognized in common law, because there it was a breach of contract, and the bail to be given would be there for breach of contract; but in criminal cases the original principle upon which bail was first founded was embodied in the ancient maxim, "A body for a body," which in time was rendered equivalent to the bailor or surety offering or pledging himself to pay a certain sum of money upon the failure of the person bailed to appear for trial. It was a recognizance to do a certain thing,—to produce the body of the person, or to pay a certain sum of money. The bailor hence became the jailer of the person bailed, into whose custody the prisoner was surrendered, and the bailor was held to be responsible to produce that prisoner at any time during the term of the court at which he was cited to appear. The later statutes and the English law made some changes from the common-law rule, but changes particularly affecting the power of justices of the peace to admit to bail, and not, in substance, affecting the power of the judges of courts of superior criminal jurisdiction, to wit, the court of king's bench and the judges of the court of assizes. Their discretionary powers, under the common law, remained untouched, even by the statute of Westminster. So that, under the common law and statute law of England, the right to bail in cases of misdemeanor was held to belong to the accused, but the right to bail in cases of felony was never recognized or conceded. Indeed, it went so far that in any case judges of courts of superior criminal jurisdiction exercised discretionary power as to whether they would admit certain persons to bail under any circumstances,—persons whose common fame was bad; persons who were recognized as common thieves; persons they

had reason to apprehend, from their reputation, habits, associates, or financial standing, would escape the jurisdiction of the court. In other words, these judges of the higher courts of criminal jurisdiction always exercised that discretion, no matter what the grade of crime was.

The statute law of the state of New York, practically speaking, embodies the common law and statute law of England, and it is this: that in cases of misdemeanor the right to bail is absolute, but in cases of felony the right to bail is one of discretion, to be exercised by the judge of the court having jurisdiction of the case on trial. As this case is presented, the defendant is charged with a felony, and his right to bail on that charge is not absolute, but rests in the discretion of the court, and in the further discretion of the court to examine into the question as to the probability of this defendant's appearing for trial, when called; and in testing that probability the court has a right to take into consideration the reputation which he has borne, acknowledged through the lips of his counsel at the bar; the fact that he has been a professional thief for many years, and the common character which surrounds his name.

So that we treat the question here as one of discretion, and not one of right.

In addition to that legal phase of the case, another question has been presented by the defendant. He has been brought to the bar on a charge of felony. He has interposed a plea of present insanity. Through the lips of his counsel he has, in effect, said to the court: "I am now insane. I am incapable of understanding my case, or of consulting with my counsel. Therefore it is improper that I should be at large. I therefore call upon the court to determine that question, and if determined in the affirmative, as I contend, I must be immured in some place of safety, for the protection of myself as well as for the protection and safety of society."

That is, in effect, what this defendant says. It is different from a plea of not guilty. It is an affirmation; an affirmative issue interposed by this defendant; an issue which he must maintain and prove; and, it being an affirmation made solemnly in court, the court cannot presume that it is not made in good faith, or that it is untrue. The court must rather presume that, when reputable counsel makes that plea and affirmation, it is made in good faith, and that it is true; and therefore the court ordered that issue to be tried, and to be tried upon a day to suit the convenience of counsel for the defendant and the district attorney,—three days from this date.

Pending the trial of that issue this defendant comes in, and asks to be admitted to bail; this defendant who has said, by his plea of present insanity, that he is incapable of understanding what he is doing, or of advising his counsel.

It is incomprehensible to me that a defendant who has made that plea should, in the next breath, say: "I am now sane. I can comprehend what I am doing, and I want to be admitted to bail, in order that I may be examined as to my sanity, outside the prison walls." I cannot conceive the logic or reason of that position. A person who claims to be insane, by that plea, places himself under

the guardianship of the court. The court, by its inherent power, has the right to control the custody of the person who claims to be insane, if that claim be well founded, and determined by judicial decree. When the conscience of the court is properly informed upon that question, then the court has the power, not only for the protection of the prisoner himself, but for the safety and well-being of society, to immure that person in some place, for safe-keeping and proper treatment. The proceeding pending is a proceeding simply to inform the conscience of the court, through the intervention of a trial jury, and while that proceeding is pending this defendant asks to be admitted to bail.

I have been unable to find any authority in point upon the question, directly determining the question in issue. Counsel for the defendant has cited two cases, which have occurred in the courts of this city,—the Rhinelander Case, and the Field Case. From an examination of those cases, I am satisfied that counsel is somewhat mistaken in his application of them to the case at bar. In the Rhinelander Case a commission of inquiry was instituted, as to the sanity of the defendant. That commission reported a disagreement. Two of the commissioners were in favor of reporting that the prisoner was insane, and one commissioner reported that he was sane. The court rejected the report of the two commissioners, and affirmed the report of the single commissioner, that the prisoner was sane; and after the prisoner was thereupon determined sane, and able to go to trial, he was then admitted to bail, because he was determined a sane person.

In the Case of Field, he had never pleaded to the indictment. He was not admitted to bail, but on his plea of insanity he was sent to an insane asylum at Buffalo; and it was after the certification from that insane asylum that he was well and cured that he was admitted to bail. So that neither the Rhinelander Case nor the Field Case has any application to this case whatever.

The only other case in America, reported, that would at all have any application, is a case reported in the court of appeals in Texas, where it was held that a person accused of crime, and who pleaded not guilty, and who put in the additional plea that he was insane at the time of the commission of the act, notwithstanding the probability that he might be acquitted on the ground of insanity, that that plea would not operate as a cause against his being admitted to bail pending that trial. That case has no application, because this case may be distinguished from it in this way: This defendant pleads present insanity, while the defendant in the Texas case pleaded insanity at the time of the commission of the crime. Therefore the ruling of the court must be without the light of judicial precedent, and must be founded upon reason and the principle involved.

It being discretionary with the court to admit to bail in any case of felony, unless that discretion be abused, it must stand as the ruling of the court having jurisdiction to try the case. I refuse to admit this prisoner to bail at this time, for the reason that he has

affirmed to this court that he is insane; and it would be a most dangerous precedent to establish, to admit a man to bail who says that he is insane, through the lips of counsel, and who, if it should be finally adjudged that he is insane, would have to be immured in a place of safety.　It would be, to a great extent, a wrong, not only to this defendant, but a probable and impending danger to the safety of the community; and, until this issue be tried and determined, I shall not admit this defendant to bail.

A further view may be taken of it, though not the controlling one, that prompts me to render this decision; and that is that the bond presented is not, in my opinion, of a sufficient character to warrant me in accepting it.　I consider that a man whose property is mortgaged so heavily as this man's property is may place the value of his property at figures away beyond what, in reason, any one would expect it to bring at a forced sale; and his valuation is not, in my opinion, the true valuation of that property.　The valuation of property in the city of New York, and in any other place in this state, is what it will bring upon a forced sale, and no more.　Any other valuation is a special or fictitious valuation; and I consider that property located in the place where this man's property is located, and where such heavy mortgages are upon it, taking the character of the property into consideration, size, dimensions, and location, is not worth anything like what the proposed surety characterizes it as being worth, and that it is not of that value.

I would therefore, even on the second ground, refuse to accept this bond, as wholly insufficient; and for that reason the proposed bail is not accepted.　On Friday morning, as originally directed by the court, the issue of this defendant's sanity will be tried.